```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              :
                                      :
       - v. -                         :     MEMORANDUM OF LAW
                                      :
                                      :     S24 04 Cr. 801 (PKC)
JAHLIL BROWN,                         :
    a/k/a "Jahlil Bennett,"           :
    a/k/a "Jolly,"                    :
                                      :
                                      :
              Defendant.              :
- - - - - - - - - - - - - - - - - - - - - x
```

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
PRE-TRIAL MOTIONS**

<u>INTRODUCTION</u>

The Government respectfully submits this memorandum of law in response to the pre-trial motions filed by defendant Jahlil Brown. In his motion, Jahlil Brown seeks (1) suppression of post-arrest statements and all physical evidence seized at the time of his arrest on August 29, 2007, (2) disclosure of all 404(b) evidence, <u>Brady</u> material, Rule 16 material, and other materials, (3) an order striking surplusage in the Indictment, and (4) leave to file additional motions.

For the reasons articulated below, each of the defendant's motion is without merit, except as where noted below, and should be denied.

**I.  THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SHOULD BE DENIED, EXCEPT THAT A SUPPRESSION HEARING WITH REGARD TO THE VOLUNTARINESS OF HIS POST-ARREST STATEMENTS IS WARRANTED**

The defendant moves to suppress post-arrest statements and other evidence seized at the time of his arrest on August 29, 2007.  (Def. Motion at 2-4.)  First, the defendant argues that his post-arrest statements and other evidence seized at the time of his arrest should be suppressed as the fruit of an unlawful arrest made without probable cause.  (Def. Motion at 2-3.)  Second, the defendant argues that his post-arrest statements should also be suppressed on the grounds that the statements were not voluntarily made.  (Def. Motion at 4.)  The defendant's motion should be denied, except that a hearing is warranted solely on the issue of the voluntariness of the defendant's statements.

**A.  Applicable Law**

"In determining whether a search warrant is supported by probable cause, a flexible, totality-of-the-circumstances standard is employed." United States v. Feliz-Cordero, 859 F.2d 250, 252 (2d Cir. 1988) (citing Illinois v. Gates, 462 U.S. 213 (1983)).  A search warrant affidavit need only establish "a _fair probability_ that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. at 238 (emphasis added).

Even if a reviewing court later finds that a search

warrant affidavit failed to establish probable cause, the evidence is admissible if the seizing agents acted in good faith. United States v. Leon, 468 U.S. 897, 923 (1984). The test for ascertaining whether the agents acted in good faith requires assessment of "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 923 n.23. The good faith exception is inapplicable, however, to situations:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing Leon, 468 U.S. at 923).

In cases where the defendant has challenged the validity of a search warrant based on misrepresentation of a fact or an omission, the Second Circuit has considered multiple factors in assessing the reliability of information provided in a search warrant affidavit, including the degree of corroboration of the informant's claims, and the informant's past reliability. See United States v. Canfield, 212 F.3d 713, 719-20 (2d Cir. 2000).

3

B.   **Analysis**

The defendant's claim that there was no probable cause for his arrest is baseless.  As detailed in the Declaration of Special Agent Jay Salvatore dated March 26, 2008, and attached hereto as Exhibit A, the defendant was initially arrested in connection with this case on August 29, 2007, during the execution of a search warrant by the NYPD at 3444 Fish Avenue, Apartment GA, Bronx, New York (the "Target Apartment").[1]  The search warrant affidavit easily meets the standard of probable cause, as it clearly sets forth the reliability and basis of knowledge for a confidential informant ("CI") who provided the information leading to the issuance of a search warrant.  Specifically, the search warrant affidavit describes the CI's history of reliability and role in leading to multiple seizures of narcotics and the arrests of multiple individuals.  See Exhibit B.  The search warrant affidavit also sets forth in a detailed manner the corroboration for the CI's claims that he purchased crack cocaine on more than one occasion from an individual in the Target Apartment within days of the execution of the search warrant.  See Exhibit B.  In sum, the search warrant affidavit amply sets forth probable cause for the issuance of warrant to search the Target Apartment.

---

[1] The search warrant and the affidavit supporting the search warrant are attached hereto as Exhibits B and C for the Court's review.

Moreover, the defendant's arrest in the course of the execution of the search warrant was lawful. As described in the Declaration of Special Agent Jay Salvatore, attached hereto as Exhibit A, the defendant was arrested in the morning of August 29, 2007, during the execution of the search warrant of the Target Apartment. When the NYPD executed the search warrant, the defendant was found in a bedroom within the Target Apartment. See Exhibit A. During execution of the search warrant, members of the NYPD recovered a firearm and multiple bags containing crack cocaine and marijuana from the same bedroom in the Target Apartment where Brown was located when the NYPD arrived. Id. Given these circumstances, there is no question as to the legality of the seizure of contraband during the execution of the search warrant, and the existence of probable cause for the defendant's arrest on August 29, 2007.

Moreover, as described in the Declaration of Special Agent Jay Salvatore, after the defendant was taken into custody and fingerprinted, NYPD detectives learned that a federal warrant had been issued for the defendant's arrest.[2] See Exhibits A and D. The defendant was then transported to the 32nd Precinct and questioned by Detective Christopher Killen and Special Agent Jay Salvatore in connection with the defendant's involvement in the homicides charged in the Indictment. See Exhibit A.

---

[2] A copy of the arrest warrant is attached as Exhibit D.

The federal arrest warrant was issued following the vote of an indictment by a grand jury in the Southern District of New York.  See Exhibit D.  Because the federal grand jury found that there was probable cause that the defendant committed a crime, there is a presumption that there was probable cause for the defendant's arrest in connection with the resulting federal arrest warrant.  Moreover, the defendant's declaration fails to provide any facts which rebut that presumption.  In sum, any statements by the defendant made after law enforcement officers became aware of the federal arrest warrant were therefore not the fruit of an unlawful arrest.[3]

In a declaration attached to his motion,[4] Brown states that he felt pressured to sign a Miranda form based on threats that family members would be jailed and deported.  The Government concedes that the defendant's declaration creates a factual dispute solely with regard to the voluntariness of the statements

---

[3] Even assuming arguendo that the defendant's initial detention during execution of the search warrant on August 29, 2007, amounted to an unlawful arrest, the defendant's post-arrest statements, made after NYPD detectives learned of the federal arrest warrant, do not amount to the fruit of an unlawful arrest.

[4] The declaration of the defendant attached to his motion is not signed. Counsel for the defendant, Kelley J. Sharkey, Esq., has advised the Government that she will provide the Government with a signed declaration shortly.  The Government predicates its concession for a hearing regarding the voluntariness of the defendant's post-arrest statements on the assumption that counsel will provide a declaration signed by the defendant.

at issue.

Accordingly, an evidentiary hearing is warranted solely regarding the voluntariness of Brown's post-arrest statements. No hearing, however, is warranted with regard to the legality of the search warrant executed at the Target Apartment, the propriety of the seizure of evidence from the Target Apartment, or probable cause for the defendant's arrest during the execution of the search warrant.  In sum, the defendant's motion should be denied in those respects and granted only in connection with the voluntariness of Brown's post-arrest statements.

## II. THE DEFENDANT'S REQUEST FOR DISCLOSURE OF ALL 404(B) EVIDENCE, BRADY MATERIAL, AND RULE 16 MATERIAL IS WITHOUT MERIT

### A.   The Defendant's Motion

The defendant seeks (1) evidence under Fed. R. Evid. 404(b) that the Government plans to use at trial, (2) exculpatory evidence also known as Brady materials, and (3) additional discovery.

### B.   Applicable Legal Principles

#### 1.   The Government's Obligation to Disclose Prior Bad Act Evidence

Under Federal Rule of Evidence 404(b), and upon defendant's request, the Government is required to provide "reasonable notice in advance of trial" of any prior bad acts

that it intends to offer in its case-in-chief. While Rule 404(b) does not specify what amount of time constitutes "reasonable notice," the Second Circuit has approved disclosure of 404(b) material as late as four days before trial, or even during trial, depending on the circumstances of the particular case. See United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995).

### 2. The Government's Pretrial Disclosure Obligations

Federal Rule of Criminal Procedure 16(a) imposes certain disclosure obligations upon the Government. Rule 16(a), among other things, requires the Government, as part of pre-trial discovery and upon a defendant's request, to disclose a defendant's criminal history, the results of physical or mental examinations of a defendant, and certain oral, written, and recorded statements of a defendant. See Fed. R. Crim. P. 16(a)(1)(A), (B), (D) & (F). Upon request the Government likewise must disclose those documents and objects, including photographs, (i) material to preparing a defense, (ii) part of the Government's case-in-chief, or (iii) obtained from the defendant. See Fed. R. Crim. P. 16(a)(1)(E). The Government further is required to provide notice of any expert testimony it plans intends to introduce at trial. See Fed. R. Crim. P. 16(a)(1)(G).

The Government also must produce information materially favorable to the defendant, see Brady v. Maryland, 373 U.S. 83

(1963), and information that affects the credibility of Government witnesses, see Giglio v. United States, 405 U.S. 150 (1972). The Second Circuit has made plain that such information must be disclosed in sufficient time for the defense to make effective use of it at trial. See United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001).

**C.  Analysis**

First, the defendant is not entitled at this time to a summary of evidence of prior bad acts the Government may introduce under Fed. R. Evid. 404(b). The Government is in the process of acquiring and assessing such evidence and intends to seek an in limine ruling on the admissibility of any such evidence one month in advance of trial.

Second, the defendant demands a broad array of materials in connection with the Government's previous disclosure of photo identifications made in connection with this case. Specifically, the Government disclosed that at least one witness failed to identify the defendant after viewing photographs in connection with the murder of Dennis Paulk on June 20, 2002. The Government also disclosed that cooperating witnesses with prior relationships with the defendant identified the defendant from a photograph book and a computer database which contained more than 100 photographs.

In general, the defendant is not entitled to the

material he seeks.  The Government will, however, attempt to locate the witness who failed to identify the defendant in connection with the Paulk murder and make him available to the defense if he/she is found.  In addition, the Government will make the photograph book and the computer database containing more than 100 photographs available to the defendant, along with the prior hearing testimony of former NYPD Detective Vincent Flynn which detailed the viewing of the computer database by cooperating witnesses.

Third, the defendant's remaining disclosure requests are without merit.  The Government believes that it is now in full compliance with Rule 16.  To the degree to which the defendant's requests amount to 3500 and Giglio material, the Government will disclose such material one week in advance of trial.  In addition, the Government is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963).  At this time, we know of no Brady material regarding the defendant which has not already been disclosed.  If such material comes to our attention, we will disclose it without delay.

### III. THE COURT SHOULD DENY THE DEFENDANT'S REQUEST FOR AN ORDER STRIKING SURPLUSAGE IN THE INDICTMENT

The defendant claims that aliases included in the Indictment caption, "Jolly" and "Jahlil Bennett," amount to irrelevant surplusage because the Government has not provided any

information suggesting the aliases have any significant bearing on the case. (Def. Motion at 7.)  The defendant also that the references to the Two Mile Posse in the Indictment are inflammatory, prejudicial, and not relevant to the crime charged, and therefore should be struck from the Indictment.  (Id.)

### A.   Applicable Law

A motion to strike surplusage is granted only where it is clear that the allegations are not relevant to the crime charged and are inflammatory and prejudicial.  See United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996) (citing United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)); see also United States v. Elson, 968 F. Supp. 900, 909 (S.D.N.Y. 1997). "If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken."  United States v. Napolitano, 552 F. Supp. 465, 480 (D.C.N.Y. 1982) (citing United States v. Chas. Pfizer & Co., 217 F. Supp. 199, 201 (S.D.N.Y. 1963)).

It is well-settled that a motion to strike aliases from an indictment will be granted only where the challenged portions of the indictment "are not relevant to the crime charged and are inflammatory and prejudicial."  Scarpa, 913 F.2d at 1013 (internal quotations and citations omitted).  In fact, "'[i]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it

11

may not be stricken.'" Id. (quoting United States v. DePalma, 461 F. Supp. 778, 797 (S.D.N.Y. 1978)).  Consistent with these standards, the use of aliases has long been approved by courts in this and other Circuits, where otherwise admissible evidence regarding the aliases was presented to the jury.  See, e.g., United States v. Kolesova, 208 F.3d 204 (2d Cir. 2000); United States v. Hines, 955 F.2d 1449, 1454 (11th Cir. 1992); United States v. Heatley, 994 F. Supp. 483, 489 (S.D.N.Y. 1998). Indeed, courts have explained that the inclusion of an alias in an indictment may well serve to obviate jury confusion where witnesses or documents refer to a defendant by her alias.  United States v. Rodriguez, 734 F. Supp. 116, 128-29 (S.D.N.Y. 1990).

With regard to the use of a name to describe a racketeering enterprise, courts have refused to strike allegations of organized crime connections that "serve to identify the 'enterprise' and the means by which its members and associates conduct various criminal activities."  Napolitano, 552 F. Supp. at 480; see also United States v. Gotti, 2004 WL 32858 at *10 (S.D.N.Y. Jan. 6, 2004).  Again, the "determinative question in a motion to strike surplusage is not the potential prejudice, but rather the relevance of the allegation to the crime charged in the indictment.  If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken."  Napolitano, 552

F. Supp. at 480.

   **B.   Analysis**

   First, with regard to aliases used to describe the defendant in the Indictment, discovery previously provided to the defendant makes clear that Brown used the name "Jahlil Bennett" when he was arrested in connection with this case.  Likewise, he signed a Miranda waiver form as "Jahlil Bennett."  With regard to use of the name "Jolly," the Government anticipates that multiple trial witnesses will identify the defendant as "Jolly."[5]

   Second, the use of the term "Two Mile Posse," to describe the racketeering enterprise with which the defendant was associated is relevant to the crimes charged in the Indictment, and is neither inflammatory nor prejudicial.  The term "Two Mile Posse," although coined by law enforcement to describe the racketeering enterprise with which the defendant was associated, is relevant because the Government expects the evidence to show that numerous members of the charged racketeering enterprise immigrated to the United States from the Two Mile neighborhood of Kingston, Jamaica.[6]  Use of the term to describe the racketeering

---

[5] Moreover, at trial of Brown's co-defendants in March 2006, multiple witnesses referred to Brown as "Jolly."  See, e.g, Tr. at 868-870, 873-874, 883, 885, 1708.  (The Government provided a transcript of the March 2006 trial to counsel in its initial discovery disclosure in 2007.)

[6] At trial of Brown's co-defendants in March 2006, witnesses provided multiple references to the Two Mile neighborhood of Kingston, Jamaica as the former residence of

13

enterprise is also useful in that it serves as a means to describe the racketeering enterprise with the defendant was associated in a non-prejudicial manner.

In sum, the defendant's motion to strike surplusage from the Indictment should be denied in its entirety.

**IV. THE GOVERNMENT DOES NOT OBJECT TO THE DEFENDANT'S MOTION TO ALLOW THE FILING OF ADDITIONAL MOTIONS**

If future disclosures by the Government provide additional bases for the defendant to request relief from the Court, the Government will not object to the filing of such motions.

**CONCLUSION**

Except where noted above, the Court should deny the defendant's pre-trial motions.

Dated:   New York, New York
         March 26, 2008

                                        Respectfully submitted,

                                        MICHAEL J. GARCIA
                                        United States Attorney

                                   By:  _____/s ____
                                        Katherine A. Lemire
                                        Assistant United States Attorney
                                        (212) 627-2532

---

members of Two Mile Posse.  See, e.g, Tr. at 466, 864.